**STATE OF WEST VIRGINIA**

**FILED**

**November 8, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **K.C. and J.C.**

**No. 19-0301** (Webster County 2018-JA-53 and 2018-JA-54)

# MEMORANDUM DECISION

Petitioner Mother B.C., by counsel Jared S. Frame, appeals the Circuit Court of Webster County's March 17, 2019, order terminating her custodial rights to K.C. and J.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her custodial rights without first granting her an improvement period. Petitioner also argues that the circuit court erred in finding that she would not comply with an improvement period without first granting her the same.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the underlying proceedings, petitioner had a history of Child Protective Services ("CPS") involvement due to the deplorable condition of her home. In November of 2015, a CPS case was opened in order to provide services to assist petitioner with maintaining a clean home. This case was closed in March of 2016. However, in July of 2017, the children were removed from petitioner's home because it had, once again, become unclean, unsanitary, unsafe, and uninhabitable for the children. The DHHR filed a child abuse and neglect petition and, during those proceedings, petitioner was adjudicated as an abusing parent. In April of 2018, the circuit court dismissed the case and returned the children to petitioner's care after finding that she had successfully completed her improvement period.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

In October of 2018, the DHHR filed the instant child abuse and neglect petition, alleging that petitioner's home was again unclean. Specifically, the DHHR alleged that J.C., who was thirteen years old at the time, reported to a CPS worker that he was forced to move to his grandmother's home due to the fact that petitioner kept a cat in the home despite his severe allergies.[2] The child also reported that petitioner's home was always "dirty and smelly." Upon visiting the home, CPS workers discovered extreme clutter, including dirty dishes and laundry, scattered throughout the home, as well as piles of garbage on the front porch. Petitioner was informed that she needed to clean the residence and that someone would be back to assess the situation. However, the conditions of the home remained the same and, rather than accepting responsibility, petitioner blamed Webster County for failing to remedy her suspended garbage pickup services. The DHHR concluded that petitioner failed to maintain a suitable home for the children despite having been provided services to remedy the same problem on two separate occasions. Petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in November of 2018. The circuit court took judicial notice of the prior case wherein petitioner was adjudicated as an abusing parent, and the DHHR presented three witnesses who testified regarding the allegations in the instant petition. The court found that petitioner refused to accept responsibility for her actions, inflicted emotional distress on the children, and chose to keep a cat rather than tend to her child's needs. The circuit court also found that the home was unfit for habitation. As such, the circuit court adjudicated petitioner as an abusing parent.

In February of 2019, the circuit court held a dispositional hearing wherein it took judicial notice of the evidence adduced at the adjudicatory hearing. Testimony established that petitioner failed to accept responsibility for her actions and minimized the condition of the home. A psychologist who performed a psychological evaluation of petitioner testified that petitioner's prognosis for attaining minimally adequate parenting was extremely poor. The psychologist testified that petitioner blamed others for her situation, claimed that her job prevented her from cleaning her home, and minimized how filthy the home was. The psychologist opined that petitioner was intellectually capable of cleaning her home, but chose not to. Given that petitioner received services over the course of two prior cases, the psychologist concluded that petitioner was not going to change her behavior. A CPS worker testified that petitioner's home was visited in December of 2018 and January of 2019, but the conditions had not improved. In fact, photographs submitted into evidence showed the continued deterioration of conditions in the home, including that the home's refrigerator and freezer were full of flies.

Petitioner testified that she was unable to comply with parenting services because the provider refused to work with her schedule. Regarding the flies in her refrigerator, petitioner claimed that she had not opened the refrigerator since November of 2018 because she never ate at home. Petitioner also claimed that she swept her home once a day. When asked what changes she implemented since the beginning of the case in order to help her maintain a cleaner home,

_____

[2]The child's exact allergy symptoms are not apparent from the record on appeal. However, the grandmother testified at the dispositional hearing that J.C. "has no desire to live like that anymore" and that petitioner's cat "makes him deathly sick."

2

petitioner testified that she was working with her managers to reduce her hours at work and requested an improvement period so that she could address the problems in her home. After hearing evidence, the circuit court found that petitioner placed her own desires above the needs of her children and refused to clean the home, despite years of services designed to help her maintain a suitable home. Further, despite J.C. moving out of the home due to his allergies, petitioner refused to give her cat away. The court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her custodial rights was in the children's best interests. It is from the March 17, 2019, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her custodial rights without first granting her an improvement period. Moreover, she argues that the circuit court erred in determining that she would not comply with the terms and conditions of an improvement period without first granting her one. According to petitioner, she has "no other major problems" apart from needing "to do more to keep her home clean." Specifically, petitioner argues that she does not do drugs, has always worked a full-time job, and has participated in services offered by the DHHR both in this case and in her prior cases. As such, petitioner avers that she should have been granted an improvement period before her custodial rights were terminated. We disagree.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." We have noted that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an

---

[3]K.C.'s father is a nonabusing parent and the permanency plan for this child, who is ten years old, is to remain in his care. The parental rights of J.C.'s father were terminated in prior proceedings. The child, who is fourteen years old, was placed with his maternal grandparents and the permanency plan is guardianship in that home.

improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Moreover, we have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)).

Here, the record demonstrates that petitioner failed to acknowledge the existence of a problem with the condition of her home. During her psychological evaluation, petitioner minimized the conditions of her home and completely omitted her 2015 case when asked about her CPS history. Petitioner claimed that she was unable to maintain a clean home due to the full-time hours she worked and her one-hour commute. Petitioner claimed that she did not know why there were flies in her refrigerator and also claimed that she had not opened her refrigerator door since the case began. Further, contrary to the evidence presented, petitioner testified that she swept her home daily. Ultimately, the psychologist opined that petitioner's prognosis for attaining minimally adequate parenting was extremely poor "because she's had services, [and] she's not taking responsibility." Based on this evidence, we find that petitioner failed to demonstrate that she was likely to participate in an improvement period given her failure to accept responsibility for her actions, especially considering she was offered services to address these exact same issues in two separate prior cases. Moreover, we find no merit in petitioner's claim that the circuit court should have first granted her an improvement period *before* finding that she would not comply with the same. It was petitioner's burden to show that she is entitled to an improvement period before one was granted to her. However, the evidence is clear that petitioner knew what was required of her and refused to clean her home. As such, we agree with the circuit court's decision to deny petitioner's request for an improvement period.

We likewise agree with the termination of petitioner's custodial rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate custodial rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when

> [t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The record establishes that petitioner has a long history of CPS intervention due to her inability to maintain a fit and suitable home for her children. Services were implemented in 2015

and 2017 to address these same issues. However, only months after having her children returned to her care, the instant abuse and neglect case was filed against petitioner because her home had become filthy yet again. Petitioner's son reported that he moved out of the home due to his severe allergies to cats and petitioner's refusal to remove her cat from her home. Indeed, as of the dispositional hearing, petitioner continued to maintain the cat in her home. Further, pictures of petitioner's home and testimony from the CPS worker demonstrated that petitioner had not cleaned her home. In fact, the conditions worsened during the proceedings. Flies were found in petitioner's refrigerator, food littered the stove, and debris from wood kindling was strewn throughout the home. Further, pictures showed that petitioner had not moved a gallon of tea on her countertop in almost two months. As testified to by the psychologist, petitioner had the intellectual capacity to understand the standard of cleanliness required given that she was twice able to address the issues in her home in prior cases. However, petitioner refused to maintain such standards and, as such, the psychologist concluded petitioner's prognosis for improved parenting was extremely poor. While petitioner argues that she should have been granted another improvement period before her custodial rights were terminated, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's failure to address the conditions in her home despite having been provided services on multiple occasions, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and/or neglect could be substantially corrected in the near future and that termination was necessary for the child's welfare. Therefore, we find no error in the termination of petitioner's custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 17, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison